**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL M. HAYES, | ) | CASE NO. 5:14cv2461 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG |
| | ) | WHITE |
| CHRISTOPHER LaROSE, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND** |
| | | **RECOMMENDATION** |

Petitioner, Daniel M. Hayes ("Hayes"), challenges the constitutionality of his convictions

and sentences in the case of *State v. Hayes*, Summit County Court of Common Pleas Case No.

CR 10 10 2930.  Hayes, *pro se*, filed Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant

to 28 U.S.C. § 2254 on November 6, 2014.  On March 27, 2015, Warden Christopher LaRose

("Respondent") filed his Answer/Return of Writ.  (Doc. No. 8.)  Hayes, now represented by

counsel, filed a Traverse on July 13, 2015.  (Doc. No. 13.)  For reasons set forth in detail below,

it is recommended that Hayes's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6ᵗʰ Cir. 2012); *Montgomery v.*

*Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Hayes's convictions as follows:

> {¶ 2} At approximately 7:00 a.m. on October 7, 2010, members of the SWAT team entered one of the ground-level apartments at 582 Talbot Avenue to execute a search warrant there.  The apartment building at 582 Talbot Avenue consists of four apartments, two of which are ground-level and two of which are directly above the ground-level apartments. All of the apartments share a common entryway at the front of the building and the apartments on each of the two floors share a common hallway.  The ground-level apartment the SWAT team members entered was located on the south side of the apartment building.

> {¶ 3} Hayes and a female companion were present at the apartment when the SWAT team executed the warrant.  Numerous SWAT team members and one of the apartment's residents testified that the team members loudly announced themselves before entering the apartment.  Moreover, the team members used battering rams to open the back door to the apartment and the common entryway ant the front of the building.  Nevertheless, Hayes testified that he never heard the team members announce themselves and thought a robbery was occurring.  As SWAT team members entered the apartment, Hayes fired a gun three times from the apartment's bedroom in three distinct directions.  He then threw the gun out of one of the windows and surrendered.  The search of the apartment later uncovered a large amount of heroin.

> {¶ 4} A grand jury indicted Hayes on each of the following counts: (1) three counts of felonious assault, in violation of R.C. 2903.11(A)(2); (2) improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1); (3) having weapons while under disability, in violation of R.C. 2923.13(A)(2); and (4) possession of heroin, in violation of R.C. 2925.11(A)(C)(4).  The three felonious assault counts also contained attendant firearm specifications, pursuant to R.C. 2941.145.  A jury found Hayes guilty on all counts.  The trial court merged the charge for improperly discharging a firearm into one of the felonious assault counts, but sentenced Hayes on all the remaining charges.  The court sentenced Hayes to a total of 18 years in prison.

> Footnote 1:  Hayes was initially indicted for the possession of cocaine, but the charge was later amended without objection.

*State v. Hayes*, 2013 WL 2712137, at *1 (Ohio App. 9th Dist. June 12, 2013).

## II.  Procedural History

**A.      Conviction**

On November 5, 2010, a Summit County Grand Jury charged Hayes with three counts of felonious assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(2) together with a firearm specification; one count of improperly discharging a firearm at or into habitation or school in violation of O.R.C. § 2923.161(A)(1); one count of having weapons while under disability in violation of O.R.C. § 2923.14; and, one count of possession of cocaine in violation of O.R.C. § 2925.11(A)(C)(4).  (Doc. No. 8-1, Exh. 1.)  The charge for possession of cocaine was later amended, without objection, to possession of heroin in violation of O.R.C. § 2925.11(A)(C)(6).  *Hayes*, 2013 WL 2712137, at *1 n.1.  *See also* Doc. No. 8-1, Exh. 10.

On March 6, 2012, a jury found Hayes guilty as charged.  (Doc. No. 8-1, Exh. 8.)  On March 12, 2012, the trial court sentenced Hayes to a total of eighteen years in prison, including a term of five years incarceration for each of the felonious assault charges, to be served consecutively; a term of three years incarceration for the three firearm specifications, which were merged, also to be served consecutively; a term of three years incarceration for having weapons while under disability, to be served concurrently with the felonious assault and firearm specification sentences; and, a term of three years incarceration for possession of heroin, also to be served concurrently.  (Doc. No. 8-1, Exh. 10.)

**B.      Direct Appeal**

On April 11, 2012, Hayes, through counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court").  (Doc. No. 8-1, Exh. 11.)  In his appellate brief, Hayes raised the following assignments of error:

I.      The trial court erred in sentencing the accused on all three counts of

-3-

felonious assault as the charges should have been merged for sentencing.

II.     The accused's convictions for felonious assault, in violation of R.C. 2903.11, is [sic] against the manifest weight of the evidence.

III.    The trial court erred in allowing the jury to view a video of the defendant's interrogation, as the video was unduly prejudicial.

(Doc. No. 8-1, Exh. 12.)  The State filed a brief in opposition on December 31, 2012.  (Doc. No. 8-1, Exh. 13.)

On June 12, 2013, the state appellate court affirmed Hayes's conviction.  *Hayes*, 2013 WL 2712137, at *9.

On July 25, 2013, Hayes filed a *pro se* Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 8-1, Exh. 15.)  In his memorandum in support of jurisdiction, Hayes raised the following Propositions of Law:

I.     Whether the Doctrine of Merger contained in Ohio Revised Code Criminal Section 2941.25, Multiple Count, provides, merger of enhancement provision, while prohibiting merger of the criminal offenses, thus, violating the Double Jeopardy Clause, prohibiting multiple punishment from the same act and/or transaction.

II.    An abuse of discretion by the court involving inadmissible evidence of a prior conviction and the result by a jury of not guilty on the essential element to-wit deadly weapon as defined by Revised Code Section 2923.13(A), is clear error and prejudicial to a fair and impartial verdict to the element premeating [sic] each criminal offense charged by indictment to be void *ab initio*.

(Doc. No. 8-1, Exh. 16.)  The State waived a response.  (Doc. No. 8-1, Exh. 17.)

On November 6, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 8-1, Exh. 18.)

**C.     Postconviction Relief**

On August 19, 2014, Hayes filed a *pro se* "Petition to Set Aside or Vacate Judgment of

-4-

Conviction or Sentence R.C. § 2953.21; *Gunner v. Welch*, 2014 U.S. App. Lexis 7203" in the

state trial court.  (Doc. No. 8-1, Exh. 22.)  In the petition, Hayes asserted the following claims:

    I.    Appellate counsel (Gregory A. Price) was ineffective for failing to inform appellant when the record was transferred to the Court of Appeals, triggering the 180 day statute of limitations for filing a petition for post-conviction relief.

    II.    Appellate counsel was ineffective for failing to assign as an error on appeal trial counsel's failure to object to the amending of the indictment in violation of Crim. R. 7(D).

    III.    Appellate counsel was ineffective for failing to assign as an error on appeal trial counsel's failure to object to officer Joe Palmer knowingly making a false statement under oath or affirmation and knowingly swearing or affirming the truth of a false statement previously made in violation of R.C. 2921.11(A)/(B) and R.C. 2921.13(A)(1)/(A)(2)/(A)(3)/(A)(6)/(A)(7).

    IV.    Appellate counsel was ineffective for failing to assign as an error on appeal that the verdict form for Count Five (Having Weapons While Under Disability) failed to contain the applicable revised code section, the degree of the offense, or any indication that the aggravating factors were found by the jury.

(Doc. No. 8-1, Exh. 22.)  The State moved to dismiss Hayes' petition on the ground that it was

untimely and should have been brought as an Application to Reopen Appeal under Ohio R. App.

Pr. 26(B).  (Doc. No. 8-1, Exh. 23.)

      On September 10, 2014, the trial court denied Hayes' petition on the grounds that it

"does not comply with R.C. 2953.23."  (Doc. No. 8-1, Exh. 25.)

      On October 7, 2014, Hayes filed a *pro se* Notice of Appeal.  (Doc. No. 8-1, Exh. 26.)

On June 30, 2015, the State moved to dismiss the appeal pursuant to App. R. 18(C) on the

grounds that "this appeal has been pending since October 2014 and no brief has been filed to

date."  *See State v. Hayes*, Ninth District Court of Appeals Case No. 27537, docket.  On July 30,

2015, Hayes' appeal was dismissed because he failed to file a brief as required by O.R.C. §

2953.23.  (Doc. No. 15-1, Exh. 27.)  A review of the Supreme Court of Ohio's online docket indicates Petitioner has not appealed this ruling.

**D.      Federal Habeas Petition**

On November 6, 2014, Hayes filed a *pro se* Petition for Writ of Habeas Corpus,[1] asserting the following seven grounds for relief:

> GROUND ONE:       WHETHER THE DOCTRINE OF MERGER
>                   CONTAINED IN [O.R.C. §] 2941.25, MULTIPLE
>                   COUNTS, PROVIDES MERGER OF ENHANCEMENT
>                   PROVISION WHILE PROHIBITING MERGER OF THE
>                   CRIMINAL OFFENSES, THUS, VIOLATING THE
>                   DOUBLE JEOPARDY CLAUSE, PROHIBITING
>                   MULTIPLE PUNISHMENT FROM THE SAME ACT OR
>                   TRANSACTION.
>
> GROUND TWO:       THE ACCUSED'S CONVICTIONS FOR FELONIOUS
>                   ASSAULT, IN VIOLATION OF [O.R.C. §] 2903.11, ARE
>                   AGAINST THE MANIFEST WEIGHT OF THE
>                   EVIDENCE.
>
> GROUND THREE:     THE TRIAL COURT ERRED IN ALLOWING THE
>                   JURY TO VIEW A VIDEO OF THE DEFENDANT'S
>                   INTERROGATION, AS THE VIDEO WAS UNDULY
>                   PREJUDICIAL.
>
> GROUND FOUR:      APPELLATE COUNSEL (GREGORY A. PRICE) WAS
>                   INEFFECTIVE FOR FAILING TO INFORM
>                   APPELLANT WHEN THE RECORD WAS
>                   TRANSFERRED TO THE COURT OF APPEALS,
>                   TRIGGERING THE 180[-]DAY STATUTE OF
>                   LIMITATIONS FOR FILING A PETITION FOR POST-
>                   CONVICTION RELIEF.
>
> GROUND FIVE:      APPELLATE COUNSEL WAS INEFFECTIVE FOR

---

[1]  The Court notes that Hayes was proceeding *pro se* when he filed his Petition on November 6, 2014.  However, on April 24, 2015, counsel Michael Partlow entered an appearance on Hayes' behalf.  Hayes's Traverse was thereafter filed by counsel on July 13, 2015.

FAILING TO ASSIGN AS AN ERROR ON APPEAL
TRIAL COUNSEL'S FAILURE TO OBJECT TO THE
AMENDING OF THE INDICTMENT IN VIOLATION
OF CRIM. R. 7(D).

GROUND SIX:    APPELLATE COUNSEL WAS INEFFECTIVE FOR
FAILING TO ASSIGN AS AN ERROR ON APPEAL
TRIAL COUNSEL'S FAILURE TO OBJECT TO
OFFICER JOE PALMER KNOWINGLY MAKING A
FALSE STATEMENT UNDER OATH OR
AFFIRMATION AND KNOWINGLY SWEARING OR
AFFIRMING THE TRUTH OF A FALSE STATEMENT
PREVIOUSLY MADE IN VIOLATION OF [O.R.C. §]
2921.11(A)/(B) AND  [O.R.C. §]
2921.13(A)(1)/(A)(2)/(A)(3)/(A)(6)/(A)(7).

GROUND SEVEN:    APPELLATE COUNSEL WAS INEFFECTIVE FOR
FAILING TO ASSIGN AS AN ERROR ON APPEAL
THAT THE VERDICT FORM FOR COUNT FIVE
(HAVING WEAPONS WHILE UNDER DISABILITY)
FAILED TO CONTAIN THE APPLICABLE REVISED
CODE SECTION, THE DEGREE OF THE OFFENSE, OR
ANY INDICATION THAT THE AGGRAVATING
FACTORS WERE FOUND BY THE JURY.

(Doc. No. 1.)

## III.  Exhaustion and Procedural Default

### A.    Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th

Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered

moot:  "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and

prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.**      **Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue

_____

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

-9-

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific

-10-

evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**C.      Application to Hayes**

> **1.      Ground Three**: *Trial Court Evidentiary Error*

In his third ground for relief, Hayes claims that the trial court erred by permitted the jury to view a videotape that unduly prejudiced him by showing him shirtless and in restraints. (Doc. No. 13 at 14-16.) Respondent argues that Hayes procedurally defaulted this claim by failing to comply with Ohio Appellate Rule 16(A)(7). (Doc. No. 8 at 24-25.) That Rule provides, "The appellant *shall* include in his brief . . . [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to ... parts of the record on which appellant relies." Ohio App. R. 16(A)(7) (emphasis added). Hayes counters that Respondent "has failed to identify any specific statute or Rule of Court that the Petitioner did not follow." (Doc. No. 13 at 14.)

> The state appellate court addressed this claim as follows:
>
> Even assuming [Hayes's claim] to be true, however, Hayes has failed to explain how the admission of the video prejudiced him in light of all the other evidence produced at trial. See App.R. 16(A)(7). This Court will not conduct a prejudice analysis with regard to all of the other evidence produced at trial when Hayes has not done so. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Hayes' third assignment of error is overruled.

*Hayes*, 2013 WL 2712137, at *7. Courts in both this district and the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent state rule upon which the state may foreclose federal habeas review. *See, e.g., Campbell v. Bunting*, 2015 WL 4984871, at

-11-

**8-9 (N.D. Ohio Aug. 19, 2015) (Carr, J.); *Johnson v. Bradshaw*, 2006 WL 2945915, at **9-10 (N.D. Ohio Oct. 13, 2006) (Wells, J.); *Tompkins v. Warden, Dayton Corr. Inst.*, 2010 WL 4683966, at *6 (S.D. Ohio July 19, 2010) (Wehrman, M.J.).  *See also Greene v. Brigano*, 123 F.3d 917, 920 (6th Cir. 1997) (noting the mandatory nature of Ohio App. R. 16(A)(7)); *Banks v. Bradshaw*, 2008 WL 4356955, at **10-11 (N.D. Ohio Sept. 17, 2008) (Gaughan, J.) (finding Ohio App. R.16(A)(2) an adequate and independent state rule that bars federal habeas review).  This claim is, therefore, procedurally defaulted.  Furthermore, Hayes has not demonstrated cause and prejudice to excuse the default.  Nor has he claimed actual innocence.

      **2.**      **Grounds Four through Seven:** *Ineffective Assistance of Appellate Counsel*

      Hayes's grounds for relief four through seven all assert ineffective assistance of appellate counsel.  Respondent argues that these claims are procedurally defaulted for three separate reasons: (1) the trial court raised the procedural bar of untimeliness; (2) the appellate court raised the procedural bar of O.R.C. § 2953.23; and (3) Hayes did not present these claims to the Ohio Supreme Court in a timely appeal and cannot now do so.  (Doc. No. 17 at 3-4.)

      Hayes raised these claims in state court on postconviction review.  (Doc. No. 8-1, Exh. 22.)  He filed a *pro se* postconviction petition on August 19, 2014.  (Doc. No. 8-1, Exh. 22.)  On September 10, 2014, the trial court denied Hayes's petition on the ground that it was untimely. (Doc. No. 8-1, Exh. 25.)  Hayes, again *pro se*, appealed the trial court's denial of his postconviction petition to the Ninth District Court of Appeals on October 7, 2014.  (Doc. No. 8-1, Exh. 26.)  On July 30, 2015, the court of appeals dismissed the appeal because Hayes failed to file a brief as required by O.R.C. § 2953.23.  (Doc. No. 15-1, Exh. 27.)  On October 15, 2015, this Court ordered the parties to submit supplemental briefing regarding the impact of the state

appellate courts' denial of Hayes's appeal, as well as Hayes's failure to appeal that decision to the Ohio Supreme Court.  (Doc. No. 16.)  Respondent complied with the Order (Doc. No. 17); Hayes did not.  Hayes therefore addressed the procedural posture of these claims only in his Traverse, which was filed before the appellate court issued its decision; he requested that the claims be held in abeyance pending their resolution in state court.  (Doc. No. 13 at 17.)

These claims are procedurally defaulted.  Hayes did not present them to the Ohio Supreme Court and is now precluded from doing so.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (if a petitioner fails to fairly present a federal habeas claim to the highest state court and has no remaining state remedies, then the petitioner has procedurally defaulted that claim); *State v. Ruff*, 70 Ohio St. 3d 1461 (Ohio 1994) (delayed appeals of felony cases are not permitted in postconviction proceedings).  Hayes has not raised any claim to excuse the default or avoid the bar.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-13-

28 U.S.C. § 2254(d) (1996). Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld,* 404 F.3d at 1010 (*quoting Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker,* 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable

-14-

application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A.**     **Ground One:** *Merger*

In his first ground for relief, Hayes argues his rights under the Double Jeopardy Clause of the Fifth Amendment were violated by the imposition of three separate five-year sentences for the same offense of felonious assault under Ohio's so-called "multiple counts" or "allied offense" statute, O.R.C. § 2941.25.  (Doc. No. 13 at 4-11.)  Hayes raised this claim on direct

review to the state appellate court, which adjudicated it on the merits.  (Doc. No. 8-1, Exh. 16.)
He then raised it on direct appeal to the Supreme Court of Ohio, which declined to accept
jurisdiction.  (Doc. No. 8-1, Exh. 17.)  This claim, therefore, is ripe for habeas review.

Respondent first argues this claim is not cognizable on federal habeas review because it
challenges a state court's interpretation and application of Ohio's sentencing laws.  (Doc. No. 8
at 20-21.)  Respondent is correct that "it is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62,
67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Instead, "[i]n conducting habeas review, a
federal court is limited to deciding whether a conviction violated the Constitution, law, or
treaties of the United States." *Id.* at 68.  Thus, to the extent Hayes argues his sentencing violates
O.R.C. § 2941.25, his claim is not cognizable on habeas review.

Hayes contends, however, that his claim is premised not on the Ohio statute, but on the
Double Jeopardy Clause of the United States Constitution.  (Doc. No. 13 at 4-5.)  The Double
Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in
jeopardy of life or limb."  U.S. Const. amend. V.  The Supreme Court has ruled that the Double
Jeopardy Clause "protects against multiple punishments for the same offense." *Brown v. Ohio*,
432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (internal quotation marks and citations
omitted).  Courts have interpreted this multiple-punishments prohibition, however, as protecting
defendants from being punished more than once for a single act only when the legislature does
not intend for the punishments to be cumulative. *See Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir.
2013) (citing *Albernaz v. United States*, 450 U.S. 333, 334, 101 S.Ct. 1137, 67 L.Ed.2d 275
(1981)).  Thus, "'[w]ith respect to cumulative sentences imposed in a single trial, the Double

-16-

Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment that the legislature intended.'" *Volpe*, 708 F.3d at 696 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). "[T]he question under the Double Jeopardy Clause whether the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe*, 708 F.3d at 697 (internal quotation marks and citations omitted).

The state appellate court in addressing this claim explained as follows:

{¶ 30} In his first assignment of error, Hayes argues that the trial court erred by sentencing him to allied offenses of similar import. Specifically, he argues that all of his felonious assault convictions should have merged. We disagree.

{¶ 31} Ohio's allied offense statute provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Thus, two or more offenses arising from the same conduct and similar import only may result in one conviction. R.C. 2941.25(A). Two or more offenses may result in multiple convictions, however, if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each. R.C. 2941.25(B).

{¶ 32} "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, syllabus. A plurality of the Ohio Supreme Court set forth a two-part test to analyze whether two offenses are allied offenses of similar import. First, one must determine whether the offenses at issue could be committed by the same conduct. *Id*. at ¶ 47. One does so by asking "whether it is possible to commit one

-17-

offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." (Emphasis sic.) *Id*. at ¶ 48. *See also id*. at ¶ 66 (O'Connor, J., concurring.) (offenses are allied "when their elements align to such a degree that commission of one offense would probably result in the commission of the other offense"). Second, one must ask whether the offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.' " *Johnson* at ¶ 49, quoting *State v.. Brown,* 119 Ohio St.3d 447, 2008–Ohio[-]4569, ¶ 50 (Lanzinger, J., concurring in judgment only). If the answer to both inquiries is yes, the offenses will merge. *Johnson* at ¶ 50.

{¶ 33} "Since *Johnson*, courts have identified the discharge of multiple gunshots in quick succession as the 'same conduct' under the multiple-count statute." *State v. Hodges*, 1st Dist. No. C–110630, 2013–Ohio–1195, ¶ 9. *See also State v. McClendon*, 2d Dist. No. 23558, 2011–Ohio–5067, ¶ 27–31. Nevertheless, "[w]here a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied, and the defendant can properly be convicted of and sentenced on multiple counts." *State v. Chaney*, 8th Dist. No. 97872, 2012–Ohio–4934, ¶ 26. *Accord State v. Tapscott*, 7th Dist. No. 11 MA 26, 2012–Ohio–4213, ¶ 46. As the Legislative Service Commission Note to R.C. 2941.25 explains:

> [A] thief who commits theft on three separate occasions or steals different property from three separate victims in the space, say, of 5 minutes, can be charged with and convicted of all three thefts. In the first instance the same offense is committed three different times, and in the second instance the same offense is committed against three different victims, i.e. with a different animus as to each offense.

R.C. 2941.25, Legislative Service Commission Note (1973).

{¶ 34} Hayes argues that he did not possess a separate animus because the evidence was that he fired three shots "towards an unknown intruder" with the sole purpose of scaring that person away. According to Hayes, there was no evidence that, at the time he fired his gun, he was even aware that there was more than one person in the apartment.

{¶ 35} As the diagram attached to the appendix shows, Hayes fired three shots in three distinct directions. One shot penetrated across the living room in the space directly next to the entryway from the kitchen. Another shot penetrated the space between the front door entryway to the apartment and the entryway to the living room. The final shot penetrated through the bedroom wall into the common

-18-

hallway leading to the apartment building's front door. Accordingly, despite Hayes' assertion that he fired without aiming, the three shots covered three key entry areas. There was also testimony that the SWAT team members at both the back door and the front door of the apartment yelled loudly and repeatedly announced themselves before then ramming both doors open with battering rams. Per their testimony, therefore, a significant amount of noise was generated at both the back and front of the apartment. Hayes did not fire the gun at the ground or simply discharge it three times in the same direction. Instead, he fired in three distinct directions, one of which covered the back entrance, one of which covered the front, and one of which could have covered either, depending on how far a person had walked. The record supports the conclusion that Hayes fired the gun three separate times with a separate animus. As such, the trial court did not err by sentencing Hayes on all three felonious assault counts. Hayes' first assignment of error is overruled.

*Hayes*, 2013 WL 2712137, at ** 8-9.

Here, Hayes essentially repeats the same arguments he made to the state appellate court on direct appeal. He asserts that merger is applicable where several shots are fired in rapid succession, and "nothing in the relevant felonious assault statute indicat[es] that the legislature intended otherwise." (Doc. No. 13 at 10.) He concedes he "did fire in a general direction of both entrances to the apartment," but argues the record supports his defense that the gunfire was just "warning shots" to deter a robbery, fired quickly before he knew the intruders were SWAT team members. *Id*. He claims he did not fire into the air because that "would surely endanger the lives of the innocent apartment dwellers in the building." *Id*. at 10-11. Respondent replies that the state appellate court's decision is well supported by the diagram of the apartment where the arrest occurred, which was attached to the decision. (Doc. No. 8 at 30.)

The state appellate court was reasonable when it concluded that the trial court did not violate the Double Jeopardy Clause by finding Hayes's three felonious assault offenses did not constitute allied offenses under O.R.C. § 2941.25 because they involved separate animus and, therefore, were not subject to merger. The court demonstrated that the sentences were supported

by the record, and, more importantly, not greater than what the Ohio legislature intended.

Accordingly, the state appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  Hayes's first ground for relief is without merit.

**B.**     **Ground Two**: *Manifest Weight of the Evidence*

Hayes contends his convictions for felonious assault were against the "manifest weight of the evidence." (Doc. No. 1 at 6.)  Respondent first argues that manifest weight of the evidence claims are grounded in state law and therefore not cognizable in habeas.  (Doc. No. 8 at 21-22.)  *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).  In *Nash v. Eberlin*, 258 Fed. App'x 761, 765 n.4 (6th Cir. 2007), however, the Sixth Circuit liberally construed a *pro se* habeas petitioner's manifest weight of the evidence claim to be one challenging sufficiency of the evidence.  The court found that Ohio courts had "adequately passed upon" the petitioner's sufficiency claim because the "determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Id*. at 765.

Here, the state appellate court, the last state court to address Hayes's manifest weight claim, expressly declined to consider his claim a sufficiency claim:

> {¶ 9} Initially, we note that Hayes' argument could be read as a challenge to the sufficiency of the evidence rather than the weight of the evidence.  A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence.  *See State v. Porter*, 9th Dist. No. 24996, 2010–Ohio–3980, ¶ 9.  An argument that the State failed to prove one of the elements of a crime is one sounding in sufficiency, not

weight. *See generally State v. Witcher*, 9th Dist. No. 26111, 2012–Ohio–4141, ¶ 18–20. Hayes specifically asserts that the State failed to prove the mens rea element of felonious assault. Nevertheless, the overarching point of his argument appears to be that the evidence produced should have persuaded the jury that he never meant to harm anyone when he fired a gun. Thus, this Court will review Hayes' argument as a manifest weight challenge, in accordance with his captioned assignment of error. *See Taylor v. Hamlin–Scanlon*, 9th Dist. No. 23873, 2008–Ohio–1912, ¶ 12 ("[A]n appellant's assignment of error provides this Court with a roadmap to guide our review.").

*Hayes*, 2013 WL 2712137, at *2.

For habeas review, however, applying *Nash*, this Court will consider Ground Two as raising a sufficiency claim. *See, e.g., Rojas v. Warden, Ross Corr. Inst.*, 2015 WL 631183, at *4 (N.D. Ohio Feb. 12, 2015); *Taylor v. Brunsman*, 2014 WL 4113320, at *14 (N.D. Ohio Aug. 20, 2014); *Jones v. Moore*, 2013 WL 6001956, at *6 (S.D. Ohio Nov. 12, 2013). As Hayes presented this claim to the state courts, it is preserved for federal habeas review. (Doc. No. 8-1, Exhs. 16, 17.)

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When reviewing claims of insufficient evidence, habeas courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

-21-

reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Because both *Jackson* and AEDPA apply to sufficiency claims, habeas review of the claims requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEPDA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The state appellate court, in addressing Hayes's claim, held as follows:

{¶ 8} The felonious assault statute provides, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). Hayes argues that the State failed to show that he knowingly attempted to cause harm to anyone. According to Hayes, the evidence was such that he fired several gunshots to serve as a warning to a possible intruder after he was startled awake. Hayes argues that he never saw or directly fired at anyone, so the State "failed to prove that [he] had the proper mental state to be convicted of felonious assault." . . .

{¶ 10} Several members of the SWAT team that executed the warrant at 582 Talbot Avenue testified at trial about their observations at the time they served the warrant. Officers Zachary Magaw and Brian French and Detective Patrick Leonard were all members of the team that entered the apartment from the rear. All three testified that the entire SWAT team yelled "Akron Police search warrant" multiple times while one of the officers banged on the door. After repeatedly announcing themselves, Officer Magaw testified that he used a battering ram to open the door. The door required three hits with the ram, as items had been propped against the door from the inside to help keep it closed. Officer Magaw testified that the SWAT team continued to loudly announce themselves throughout the entry process.

{¶ 11} Once the door was open, Detective Leonard visually cleared the room, which was the kitchen, and deployed a flash noise device ("FND"). Officer

-22-

French explained that an FND is a pressurized law enforcement tool that releases a loud noise as well as a flash of light when it detonates. The FND acts as a distraction to stun any nearby individuals with the goal of aiding the police in making a safe entry. Additionally, because only the police have access to FNDs, Officer French testified that their very use announces the fact that police officers (i.e., not unlawful intruders) are entering a structure. There was testimony that the force of the FND Detective Leonard detonated shattered the kitchen window.

{¶ 12} After he deployed the FND, Detective Leonard testified that he heard a pop, but nevertheless proceeded into the apartment directly behind Officer French. Officer French testified that he heard two pops just after the FND detonated, but assumed the SWAT team members at the front door had fired a weapon. At the point when he heard the two pops, Officer French stated that he was in the apartment's kitchen, preparing to enter the living room.

{¶ 13} Officer Ted Male testified that he was one of the SWAT team members stationed at the apartment building's front door/common entryway. He testified that he breached the front door with a ram after he heard the SWAT team members at the back door yelling "Akron Police search warrant." He further testified that he and the other two officers at the front door were yelling "Akron Police search warrant" as he breached the front door. After Officer Male opened the door, he and the other two officers with him held at the door's threshold, outside the common hallway shared by the individual apartments. Officer Male testified that it was uncommon for SWAT members to hold at a door rather than proceed inside, but that he had been instructed to wait at the door on that particular day. From his position at the front door, Officer Male testified that he heard two distinct gunshots come from inside the apartment.

{¶ 14} Officer Thomas Gottas testified that he was assigned to the southeast perimeter of the apartment, such that he was standing outside and not far from the outside wall of the apartment's bedroom when the breach began. Officer Gottas testified that he heard the SWAT team yell "Akron Police search warrant" numerous times before breaching the doors, heard the FND detonate, and saw the window in the apartment's kitchen shatter from the force of the FND. At about that same time, Officer Gottas testified that he heard three gunshots. Captain Michael Shearer, the SWAT team commander who was positioned outside that day as well, also testified that he heard gunshots. Specifically, Captain Shearer stated that he thought he heard a gunshot simultaneous to the detonation of the FND and heard two gunshots after its detonation. Captain Shearer testified that he manually inspected every weapon the SWAT team members carried that day and that none of the weapons were ever discharged.

{¶ 15} A few seconds after he heard two pops, Officer French (the first inside

-23-

the apartment by way of the rear entrance) testified that he heard glass breaking. He quickly approached the apartment's bedroom and saw Hayes with his back to him and his right hand out of the bedroom window. He then commanded Hayes to show him his hands and Hayes surrendered. From his position outside the apartment, Officer Gottas testified that, after he heard three gunshots, he saw Hayes come through the bedroom window with his arms and upper body. Officer Gottas observed that Hayes had a gun in his hand. He then yelled "police," saw Hayes drop the gun onto the ground, and watched as Hayes pulled himself back inside the apartment.

{¶ 16} Detective Anna Romito testified that she responded to the apartment as part of the crime scene unit after the breach concluded. Detective Romito testified that the police found three shell casings at the bottom of the bed in the apartment as well as three bullet holes. Although the police only removed one of the three bullets for testing, Detective Romito testified that the bullets were located: (1) in the wall of the living room, leading into the kitchen; (2) in the wall of an archway, leading into the living room from the front door area; and (3) in the outside wall of the apartment across the hall, having passed through the bedroom wall, the stairwell, and the common hallway leading to the front door of the apartment building. As a part of her investigation, Detective Romito created a diagram of the apartment, the three shell casings the police found in the bedroom, and the three bullet holes the police found in the apartment, along with their respective trajectories. To aid this Court's discussion, Detective Romito's diagram has been included in the appendix attached to this opinion.

{¶ 17} Detective Romito testified that none of the bullets the police located had been fired into the ground or ceiling. Instead, two of the gunshots were approximately at waist-level and the third was at head level. Former Supervisor Sergeant Terrence Hudnall verified that all three bullet holes "were within the height of a person" and, given his training and experience, none of the shots appeared to have been warning shots. Ballistics testing later confirmed that the one bullet and three casings the police had tested were all consistent with having been fired from the .9mm Luger caliber Astra semi-automatic that the police recovered from the ground outside the apartment's bedroom window. Further, gunshot residue testing confirmed that the swab the police collected from Hayes had particles on it that were highly indicative of primer shot residue.

{¶ 18} Two different officers testified that they interviewed Hayes at the police station. Detective James Palmer testified that he interviewed Hayes with regard to the heroin the police found in the apartment, but also asked him whether he had a gun when the SWAT team entered. Hayes told Detective Palmer that he never saw a gun. Detective Bertina King testified that she specifically interviewed Hayes about the shooting incident and that Hayes denied ever touching a gun. Detective King testified that she even suggested to Hayes that he

might have fired a gun if he was concerned that a break in was occurring at the apartment. Hayes, however, continued to deny that he ever fired a gun.

{¶ 19} Hayes testified in his own defense. Hayes testified that he spent the night at the apartment at 582 Talbot Street with a female friend and that the two were still sleeping in the apartment's bedroom when he was awoken by a "big bang" that sounded like someone was kicking in the door. He testified that he then heard a scraping sound, which he identified as the sound of certain items he had placed against the back door being moved across the floor. Hayes explained that he had propped several items against the back door to the apartment before going to bed because he was always concerned that someone might break in. Knowing that there was a gun on the floor next to the bed, Hayes testified that he grabbed it. Hayes then heard the FND detonate, but testified that he thought it was a gunshot. According to Hayes, he never heard the SWAT team members announce themselves, so he thought a robbery was occurring. Hayes testified that he fired the gun he picked up from the floor three times in an effort to scare off any intruder. He further testified that he fired the three shots without aiming in any particular direction. After he fired the gun, Hayes stated that he heard the front door get hit and the police announce themselves. He then threw the gun out the bedroom window because he did not want to appear armed and risk getting shot when the police got to him.

{¶ 20} Shakendra Hill testified that she slept at the apartment with Hayes the night before the SWAT team arrived. Hill testified that she was still asleep in the morning when she heard a "big boom." Because she thought someone was breaking into the apartment, Hill then climbed out of bed and hid in between the open door of the adjacent room (labeled "Solarium" on the diagram attached to the appendix) and the bedroom wall. Subsequently, Hill testified that she saw a flash from the FND, heard gunshots, and ran into the adjacent room. According to Hill, she never heard the SWAT team members announce themselves and never heard any glass break, including the bedroom window.

{¶ 21} One resident from each of the apartment building's other three apartments also testified at trial. Belinda Phinnessee testified that she lived directly above the apartment the SWAT team entered and was awake when the breach began. According to Phinnessee, she heard a window shatter, a big boom, someone say "get down," and multiple gunshots, but never heard the SWAT team announce themselves or the battering rams being used. Phinnessee agreed that, had a battering ram been used, she would have heard it.

{¶ 22} Darnella Cameron testified that she lived in the apartment on the ground floor directly across the hall from the apartment the SWAT team entered. Cameron testified that she was sleeping on the morning the SWAT team entered the building and was awoken by the sound of her dogs barking. Much like

Phinnessee, Cameron testified that she heard glass breaking, someone say "get down," and shooting, but never heard the SWAT team announce themselves or the battering rams being used. As to the gunshots, Cameron testified that she heard a few shots, but could not recall how many because she "wasn't paying [ ] attention." Cameron also admitted that she suffered from poor hearing in one ear and memory loss due to a disability.

{¶ 23} Christopher Batte testified that he lived in the upstairs apartment across the hallway from the apartment the SWAT team entered. Batte testified that he was awake getting ready for school when he heard the police identify themselves "in very audible tones." Batte testified that he then heard some "very loud distinct booms" and walked out over the back door balcony to see what was happening. Batte testified that he could not recall if he heard any gunshots.

{¶ 24} Hayes was charged with three counts of felonious assault. The counts pertained to Officer French (the first to enter the apartment through the rear door), Detective Leonard (the second to enter through the rear door), and Detective Male (the first officer stationed at the apartment building's front door). Having reviewed the record, we cannot conclude that the jury lost its way in convicting Hayes on all three counts. As the diagram attached to the appendix shows, one of the shots that Hayes fired was fired in the direction of the back door, one was fired in the direction of the center of the apartment and its front door, and one was fired in the direction of the common hallway leading to the apartment building's front door. There was evidence that both Officer French and Detective Leonard were en route through the apartment when the two shots were fired towards the back and center of the apartment. Moreover, there was evidence that, had he been instructed differently and proceeded as the SWAT team usually does, Detective Male would have been en route through the apartment building's common hallway at the time the third shot was fired in that direction. There was testimony that all three shots were within the height of a person. None of the shots were fired into the ground and it did not appear to Supervisor Sergeant Hudnall that the shots were meant to be warning shots.

{¶ 25} To the extent Hayes argues that he fired a gun because he thought a robbery was occurring, there was extensive testimony that the SWAT team members loudly announced themselves multiple times at both the front and rear of the apartment building before entering it. Indeed, the resident of the upstairs apartment on the opposite side of the hallway heard the police identify themselves "in very audible tones." Several officers testified that they continued to announce themselves after they breached the apartment. Hill also testified that she was able to see the flash from the FND, a device available solely to law enforcement, when she was hiding in the bedroom. While Hayes claimed not to have heard any of the officers announce themselves, he simultaneously claimed to have heard the scraping noise that was made in the kitchen when the items he

-26-

used to blockade the door were moved out of the way; a slight noise in comparison to the noise the officers were making. Hayes also admitted that he lied to both Detectives Palmer and King when they asked him about having and firing a gun. Given all of the evidence in the record, the jury was free to reject Hayes' version of the events and conclude that he knowingly fired a gun three times in an attempt to cause physical harm to three different people. *See* R.C. 2903.11(A)(2); *State v. Lanik,* 9th Dist. Nos. 26192 & 26224, 2013–Ohio–361, ¶ 44 (jury free to believe some, all, or none of each witness' testimony). This is not the exceptional case where the jury clearly lost its way by convicting Hayes on three counts of felonious assault. Hayes' argument that his convictions are against the manifest weight of the evidence lacks merit. Consequently, his second assignment of error is overruled.

*Hayes*, 2013 WL 2712137, at **1-6.

Hayes contends the state appellate court's reasoning was "at best strained and at worst entirely misfocused" in rejecting his defense that he did not hear the SWAT team announce itself and therefore did not knowingly fire shots at them.  (Doc. No. 13 at 12-14.)  The Court disagrees. The state court provided a detailed account and well-reasoned analysis of the evidence presented to support Hayes's convictions for felonious assault.

Accordingly, the state appellate court's decision was neither contrary to, nor unreasonable application of, *Jackson*.  Hayes' second ground for relief is without merit.

## V.  Conclusion

For the foregoing reasons, it is recommended that Hayes's Petition be DENIED.


/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: January 27, 2016


## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of**

Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).